# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLADSTONE ASSOCIATES, LLC | : CIVIL ACTION |
| v. | : NO. 18-1050 |
| FINTRUST CAPITAL ADVISORS, LLC | : |

## ORDER-MEMORANDUM

**AND NOW**, this 16th day of April 2018, upon considering Defendant's Motion to dismiss or transfer venue (ECF Doc. No. 5) and Plaintiff's Opposition (ECF Doc. No. 8) with supporting competent proof, it is **ORDERED** Defendant's Motion (ECF Doc. No. 5) is **DENIED** and it shall answer the Complaint no later than **April 30, 2018.**

### *Analysis*

Gladstone Associates, LLC provides "high-end business and transaction advisory consultation to independent financial advisory firms."[1] Gladstone is located in Plymouth Meeting, Pennsylvania.[2]

Gladstone provided consulting services to Broad Street Capital Advisors, LLC, which has its principal place of business in Georgia. No owner-member of Broad Street is a Pennsylvania citizen.[3] Gladstone learned of Broad Street through a mutual contact.[4] Broad Street sought Gladstone's help on its acquisition strategy to grow its business.[5]

---

[1] Complaint, ECF Doc. No. 1-2, ¶ 5.

[2] *Id.* ¶ 1.

[3] Affidavit of R. Patrick Sheridan, ECF Doc. No. 5-2, ¶ 5. Where a defendant raises jurisdiction as a defense, we may examine affidavits and other competent evidence outside the complaint to

Gladstone agreed to provide "corporate planning advice" to Broad Street for its acquisition strategies.[6] Broad Street's chief executive officer R. Patrick Sheridan signed Gladstone's engagement contract and returned it to Gladstone's Pennsylvania office.[7] Gladstone and Broad Street agreed Pennsylvania law would govern their agreement.[8] Under this first work agreement, Gladstone employees completed their work for Broad Street "almost entirely" from their office in Pennsylvania.[9] Broad Street's Mr. Sheridan visited Gladstone's Pennsylvania office to meet with Gladstone employees on this first assignment.[10]

After Gladstone completed its first consulting assignment for Broad Street, Broad Street again asked Gladstone to provide advice regarding a business combination with FinTrust Investment Advisors, LLC, located in South Carolina.[11] Broad Street agreed to pay Gladstone $7,500 a month and a closing fee if Broad Street and FinTrust successfully combined.[12] The

---

determine if jurisdiction exists. *See Streamline Bus. Services, LLC v. Vidible, Inc.*, No. 14-1433, 2014 WL 4209550, at *8 (E.D. Pa. Aug. 26, 2014) (citing *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir.1996)) ("Once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits, or competent evidence, sufficient contacts with the forum state to establish personal jurisdiction.").

[4] Affidavit of Paul T. Lally, ECF Doc. No. 8-1, ¶ 6.

[5] *Id.* ¶ 7.

[6] ECF Doc. No. 1-2, ¶ 7.

[7] ECF Doc. No. 8-1, ¶ 9.

[8] Exhibit B, ECF Doc. No. 8-2 at 6.

[9] ECF Doc. No. 8-1, ¶ 12.

[10] *Id.* ¶ 13.

[11] *Id.* ¶ 14.

[12] ECF Doc. No. 1-2, ¶ 10.

parties agreed the successful closing fee would be equal to the total monthly fees paid to Gladstone (the number of months times $7,500 = closing fee).[13] Gladstone employees did "nearly all" the work for Broad Street on the FinTrust transaction from its Plymouth Meeting, Pennsylvania office.[14]

Approximately fifteen months later, Broad Street and FinTrust Investment Advisors successfully combined and renamed their combined businesses FinTrust Capital Advisors, LLC ("FinTrust").[15] FinTrust's principal place of business is in Athens, Georgia.[16] Gladstone requested the now combined FinTrust pay the $112,500 closing fee but FinTrust refused.[17]

Gladstone sues FinTrust alleging breach of contract or quantum meruit for failing to pay a $112,500 closing fee. FinTrust moves to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Middle District of Georgia.

### A. We may exercise personal jurisdiction over FinTrust.

FinTrust challenges our exercise of personal jurisdiction arguing we lack general and specific jurisdiction over it. In deciding FinTrust's challenge to personal jurisdiction, Gladstone "bear[s] the burden to prove, by preponderance of the evidence, facts sufficient to establish

---

[13] *Id.* ¶ 12.

[14] ECF Doc. No. 8-1, ¶ 17.

[15] ECF Doc. No. 1-2, ¶¶ 13-14.

[16] ECF Doc. No. 5-2, ¶ 5.

[17] ECF Doc. No. 1-2, ¶ 16.

personal jurisdiction."[18] Gladstone needs "affidavits or other competent evidence" to prove personal jurisdiction is proper.[19] When assessing personal jurisdiction, we accept Gladstone's allegations as true and resolve fact disputes in its favor.[20]

We may exercise two kinds of jurisdiction over FinTrust, specific jurisdiction and general jurisdiction. We assess FinTrust's contacts with Pennsylvania based on allegations in the Gladstone's complaint and declarations. Following close review, Gladstone establishes FinTrust had sufficient minimum contacts with Pennsylvania to warrant specific jurisdiction.

### 1. We lack general jurisdiction over FinTrust.

To exercise general jurisdiction over FinTrust, we must find its "affiliations with [Pennsylvania] are so 'continuous and systemic' as to render them essentially at home in [Pennsylvania].'"[21] The Supreme Court stressed our general jurisdiction injury "is not whether that foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systemic.' It is whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State."[22] The traditional paradigms

---

[18] *Control Screening LLC v. Technological Application and Production Co. (Tecapro), HCMC-Vietman*, 687 F.3d 163, 167 (3d Cir. 2012) (quoting *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992)).

[19] *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Dayhoff*, 86 F.3d at 1302).

[20] *See Esposito v. Las Vegas Sands Corp.*, No. 17-2936, 2018 WL 1010627, at *2 (E.D. Pa. Feb. 21, 2018) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).

[21] *Daimler AG v. Bauman*, 571 U.S. ___, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984)).

[22] *Id.* at 762 (quoting *Goodyear*, 564 U.S. at 919).

4

of general jurisdiction for corporations are "the place of incorporation and principal place of business."[23]

Under the traditional paradigms of general jurisdiction, FinTrust is "at home" in Georgia and South Carolina, the location of its principal place of business and where its members are citizens.[24] We have no facts to show FinTrust's "affiliations with [Pennsylvania] are so continuous and systematic as to render [it] essentially at home in the forum State."[25] We cannot exercise general jurisdiction over FinTrust because it is not at home in Pennsylvania.

### 2. We may exercise specific jurisdiction over FinTrust.

To exercise specific jurisdiction over FinTrust, we must find FinTrust has sufficient minimum contacts with Pennsylvania "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice."[26] We analyze constitutional due process concerns together with Pennsylvania's Long Arm Statute because it authorizes specific jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."[27]

Our Supreme Court instructs our specific jurisdiction analysis focuses on "the relationship among the defendant, the forum, and the litigation" to decide if FinTrust's "suit-

---

[23] *Id.* at 760 (internal citations omitted).

[24] *See id.*

[25] *Id.* at 762 (quoting *Goodyear*, 564 U.S. at 919).

[26] *Walden v. Fiore*, 571 U.S. __, 134 S. Ct. 1115, 1121 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[27] 42 Pa. Stat. Ann. § 5322.

related conduct [] create[s] a substantial connection with [Pennsylvania]."[28] In *Walden*, the Court instructed "the plaintiff cannot be the only link between the defendant and the forum ... it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."[29] FinTrust's contacts with Pennsylvania, however, "may be intertwined with his transactions or interactions with [Gladstone] or other parties."[30]

Our court of appeals directs us to analyze three factors in determining whether we may exercise specific jurisdiction over FinTrust.[31] We must first determine whether FinTrust "purposefully directed its activities at [Pennsylvania]."[32] We then determine if FinTrust's activities directed towards Pennsylvania arise from or relate to Gladstone's claims.[33] If the first two factors are met, we then "consider whether the exercise of jurisdiction would comport with traditional motions of fair play and substantial justice."[34]

    i.    **Gladstone establishes FinTrust purposefully directed activities at Pennsylvania.**

Gladstone adduces evidence FinTrust purposefully directed its activities at Pennsylvania because FinTrust, as "Broad Street," sought services from a Pennsylvania based company then

---

[28] *Walden*, 134 S. Ct. at 1122.

[29] *Streamline*, 2014 WL 4209550, at *8 (quoting *Walden*, 134 S. Ct. at 1123).

[30] *Walden*, 134 S. Ct. at 1123.

[31] *Streamline*, 2014 WL 4209550, at *8; *see also D'Jamoos ex. rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

[32] *Id.* (citing *D'Jamoos*, 566 F.3d at 102 and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[33] *Id.*

[34] *Id.*

mailed the signed agreement to the Pennsylvania company and agreed Pennsylvania law would govern their agreement.[35] Broad Street communicated and received work product produced by Gladstone in Pennsylvania. Broad Street sent payment under the agreement to Pennsylvania over the next four months.[36] Broad Street's chief executive officer traveled here to work with Gladstone employees.[37] Broad Street then sought another agreement with Gladstone.[38] Broad Street again signed and returned the second agreement to Pennsylvania, sent payment to Pennsylvania, and agreed Pennsylvania law governs their relationship.[39] Broad Street employees regularly contacted Gladstone employees in Pennsylvania over the course of the next twelve months.[40] Gladstone completed the work requested by Broad Street in Pennsylvania.[41]

FinTrust, as "Broad Street," purposefully directed its activities at Pennsylvania. For over fifteen months, it sought and maintained a contractual relationship with a Pennsylvania company, had work completed on its behalf in Pennsylvania, sent payments to Pennsylvania, had at least one employee travel to Pennsylvania to further its work, and agreed Pennsylvania law governed its business relationship with Gladstone.

---

[35] ECF Doc. No. 8-1, ¶ 9; ECF Doc. No. 8-2 at 6.

[36] ECF Doc. No. 8-1, ¶¶ 11-12.

[37] *Id.* ¶ 13.

[38] ECF Doc. No. 8-1, ¶¶ 16-18, ECF Doc. No. 8-3 at 2.

[39] ECF Doc. No. 8-1, ¶¶ 16-18, ECF Doc. No. 8-3 at 2.

[40] ECF Doc. No. 8-1, ¶¶ 17-19.

[41] *Id.*

### ii. Gladstone's claims arise from FinTrust's activities in Pennsylvania.

Gladstone alleges FinTrust breached their second agreement by failing to pay Gladstone's success fee after Broad Street and FinTrust successfully combined. Gladstone's claim arises directly from FinTrust's activities in Pennsylvania because it arises from the second agreement which it sought and paid for in Pennsylvania. Additionally, Gladstone completed the allegedly successful work earning them the success fee from its Pennsylvania office.

### iii. Our exercise of specific jurisdiction over FinTrust comports with fair play and substantial justice.

After finding FinTrust has sufficient minimum contacts with Pennsylvania because it purposefully directed its activities here and the claim arises from those activities, we must ensure our exercise of specific jurisdiction over FinTrust "comport[s] with fair play and substantial justice."[42] We consider "the burden on [FinTrust], [Pennsylvania's] interest in adjudicating the dispute, [Gladstone's] interest in obtaining convenient and effective relief, [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies…"[43]

Our exercise of jurisdiction comports with fair play and substantial justice. We have no basis to find FinTrust is burdened by litigating in Pennsylvania because it sought a Pennsylvania business to produce work product and already traveled here to further its business interests. Pennsylvania also has an interest in adjudicating the dispute because the parties selected its law to govern their relationship and FinTrust's conduct allegedly caused injury to a Pennsylvania business. Our exercise of specific jurisdiction over FinTrust is also fair to Gladstone in effectively and conveniently obtaining relief because the crux of Gladstone's complaint is the

---

[42] *Aozora New Zealand LTD. v. Fru-Veg Marketing, Inc.*, No. 17-2594, 2018 WL 1545585, at *3 (E.D. Pa. March 29, 2018).

[43] *Id.* (quoting *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1222 (3d Cir. 1992) (citations omitted)).

8

work it did in Pennsylvania earned it a fee under their agreement and the out-of-state business refuses to pay the fee. For these same reasons, our efficient resolution of this dispute is in the interests of the interstate judicial system and comports with fair play and substantial justice.

### B. We decline transfer to the Middle District of Georgia.

FinTrust moves in the alternative for transfer of venue to the United States District Court for the Middle District of Georgia under 28 U.S.C. §1404(a).[44] FinTrust argues we should transfer this case to the United States Court for the Middle District of Georgia because FinTrust contends the conduct giving rise to Gladstone's claim occurred in Georgia and South Carolina, and its witnesses and records are in Georgia and South Carolina.[45]

We may only transfer to a venue where this case "might have been brought" and FinTrust bears the burden of venue is proper in the alternative district.[46] This case could have been brought in the United States District Court for the Middle District of Georgia because FinTrust's principal place of business is in Athens, Georgia, and the Middle District of Georgia has personal jurisdiction over FinTrust. Venue is proper in the Middle District of Georgia.[47]

Section 1404(a) allows us to transfer a case to any other district where the suit "might have been brought" "[f]or the convenience of the parties and witnesses" and "in the interest of

---

[44] ECF Doc. No. 5-1 at 13.

[45] *Id.*

[46] *See Aetna Inc. v. People's Choice Hospital, LLC*, No. 17-4354, 2018 WL 1287491, at *3 (E.D. Pa. March 13, 2018) (quoting 28 U.S.C. 1404(a)).

[47] 28 U.S.C. §§1391(b)(1), (c)(2); *see also Lawman Armor Corp. v. Simon*, 319 F. Supp. 2d. 499, 507 (E.D. Pa. 2004) (finding venue proper in the Eastern District of Michigan because the defendant resided there).

9

justice."[48] Our court of appeals instructs us to consider the "private and public interests protected by the language of §1404(a)."[49] We examine *Jumara's* private and public interest factors and determine transfer does not serve the convenience of the parties and witnesses and the interests of justice.[50]

### 1. *Jumara* private interest factors do not weigh in favor of transfer.

The private interests have included: (1) plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records (similarly limited to the extent that the files could not be produced in the alternative forum).[51]

The private interest factors weigh against transfer or are neutral except FinTrust's forum preference. Plaintiff's forum preference weighs against transfer because Gladstone's choose Pennsylvania because it is based here and suffered harm here. Where the claim arose also weighs against transfer because Gladstone suffered injury here. Its claim arose here because Gladstone completed the work here which allegedly earned it the unpaid fee in Pennsylvania. The convenience of the parties, convenience of the witnesses and the location of the books and records are all neutral. While FinTrust argues the documents and witnesses to the combination between Broad Street and FinTrust are located in Georgia, the merger is not the crux of

---

[48] *Lawman*, 319 F. Supp. 2d at 506.

[49] *Id.* (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).

[50] *Id.*

[51] *Jumara*, 55 F.3d at 879 (citations omitted).

10

Gladstone's claim. Instead, it is the work Gladstone allegedly completed in Pennsylvania for the successful merger which earned it the alleged success fee which is relevant to its claim. The private interest factors weigh against transfer because FinTrust's preference to litigate closer to home is the only factor which weighs in favor of transfer.

### 2. *Jumara* public interest factors do not weigh in favor of transfer.

The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations for trial; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and, (6) the familiarity with applicable state law in diversity cases.[52] FinTrust does not offer argument why the public interest factors weigh in favor of transfer. The public interest factors are largely neutral except the final factor. Familiarity with applicable state law weighs against transfer because this is a diversity case where the parties selected Pennsylvania law to govern.

Because neither the private nor the public interests weigh in favor of transfer or are neutral, we deny FinTrust's motion to transfer venue.

### III. Conclusion

We deny FinTrust's motion to dismiss for lack of personal jurisdiction because FinTrust has sufficient contacts with Pennsylvania for our exercise of jurisdiction to comport with fair play and substantial justice. We also deny FinTrust's motion to transfer venue under 28 U.S.C. § 1404 because neither *Jumara* private or public interests weigh in favor of transfer.

KEARNEY, J.

---

[52] *See Jumara*, 55 F.3d at 879 (citations omitted).